IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    )
                      )
v.                         )     Criminal No. 14-284
                      )
BRANDON MOOREFIELD      )

OPINION

DIAMOND, D.J.

On December 16, 2014, defendant Brandon Moorefield was charged in a one-count indictment with possession of a firearm by a convicted felon on or about November 13, 2014, in violation of 18 U.S.C. §922(g)(1). Presently before the court are the following pretrial motions filed by defendant: (1) Motion to Suppress Evidence (Document No. 35); (2) Motion for Discovery (Document No. 32); (3) Motion to Dismiss the Indictment on Jurisdictional Grounds (Document No. 33) and (4) Motion to Compel the Government to Provide Defendant with a Statement of Uncharged Misconduct Evidence (Document No. 34). The government has filed an omnibus response to defendant's motions. See Document No. 37. For the reasons stated herein, defendant's motion to suppress and motion to dismiss the indictment both will be denied, and his other pretrial motions will be granted in part and denied in part.

I.    **Background**

The background of this case is derived from a criminal complaint against defendant and supporting affidavit filed on November 19, 2014, by Special Agent ("SA") John A. Orlando of the

Federal Bureau of Investigation, in which SA Orlando averred that he had probable cause to believe that defendant, a convicted felon, possessed a firearm in violation of federal law. See Document No. 3.

According to SA Orlando's affidavit, on November 13, 2014, officers of the Wilkinsburg Police Department and the Allegheny County Probation Office were traveling on Swissvale Avenue in Wilkinsburg when they observed defendant walking with a plainly visible outline of a firearm protruding from his clothing. The officers approached defendant, identified themselves as law enforcement and stated that they needed to speak with him. In response, defendant grabbed the right side of his waistband and fled toward Penn Avenue. The officers turned their vehicle around and then observed defendant fleeing toward Stoner Way with a firearm in his hand. A chase ensued and, at one point, the officers observed defendant hiding near Stoner Way, but they noticed that he no longer had the firearm in his hand. The officers continued to chase defendant until he was stopped and apprehended near the intersection of Penn Avenue and Coal Street in Wilkinsburg.

Defendant was taken into custody and a search incident to arrest revealed that he had a bag of marijuana. The officers returned to the location where they had observed defendant hiding and recovered a firearm with an extended magazine, which was loaded with 30 rounds of ammunition and had a bullet in the chamber.

According to SA Orlando's affidavit, defendant's criminal history shows that he has a previous conviction of a state felony narcotics offense punishable by more than one year imprisonment. In addition, the firearm in question was reported stolen out of Pittsburgh in June 2013. Ruger, the manufacturer of the firearm, has manufacturing operations in Arizona, New

2

AO 72
(Rev. 8/82)

Hampshire and Connecticut, thus the firearm traveled in interstate commerce.

## II.    Motion to Suppress Evidence  (Document No. 35)

Defendant argues that the evidence seized during his arrest on November 13, 2014, should be suppressed because it was obtained in violation of the Fourth Amendment for the following reasons: (1) the decision to accost him was without probable cause; (2) his arrest was warrantless and without probable cause and does not fall within any exception to the warrant requirement; and (3) the seizure of evidence following his arrest was warrantless and without probable cause and the police conduct does not fall within any exception to the warrant requirement. Defendant's motion contains little else beyond these general, bare-bones assertions that the police conduct violated his Fourth Amendment rights. However, he requests a hearing "at which the government's proffered justification for the admissibility of its evidence may be heard, examined, and ruled upon by this honorable Court."

In response, the government argues that defendant's suppression motion fails to contain a single fact that contradicts the allegations set forth in the criminal complaint, thus he has failed to present a colorable claim for a basis to suppress, and his motion should be denied without a hearing. The government is correct.

### A.    No Evidentiary Hearing is Required

Federal Rule of Criminal Procedure 12(b)(3)(C) permits a defendant to file a motion to suppress evidence before trial, but an evidentiary hearing on such a motion is not held as a matter of course. See Fed.R.Crim.P. 12(c)(1) (providing that the court "may" schedule a motion hearing). The purpose of an evidentiary hearing on a suppression motion "is to assist the court in ruling upon

3

a defendant's specific allegations of unconstitutional conduct—its purpose is not to assist the moving party in making discoveries that, once learned, might justify the motion after the fact." United States v. Hines, 628 F.3d 101, 105 (3d Cir. 2010). Therefore, to require a hearing, "a suppression motion must raise 'issues of fact material to the resolution of the defendant's constitutional claim.'" Hines, 628 F.3d at 105 (quoting United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996)). A hearing is required only if the suppression motion is "sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." Hines, 628 F.3d at 105 (citing Voigt, 89 F.3d at 1067) (explaining that a claim is "colorable" if it consists "of more than mere bald-faced allegations of misconduct").

In sum, the procedure for a defendant who seeks an evidentiary hearing on a motion to suppress is to " (1) state a colorable legal claim, (2) identify facts material to that claim, (3) show why the facts are disputed, and then (4) request a hearing to resolve the dispute." Hines, 628 F.3d at 108. In this case, defendant's motion does not state a colorable claim, raise a material fact or dispute the government's version of events. Given these failures, an evidentiary hearing is not warranted.

First, defendant's motion does not properly raise a colorable legal claim. To raise a constitutional claim in a suppression motion, "a defendant must state that a violation occurred and allege facts that, if true, would support a finding that the evidence in question was obtained in violation of the defendant's constitutional rights." Hines, 628 F.3d at 105-106 (citing United States v. Brink, 39 F.3d 419, 424 (3d Cir. 1994)). To satisfy this requirement, the motion to suppress

4

"must identify a constitutional violation at the outset and connect it to the evidence in question; bare assertions . . . without more, will not suffice." Hines, 628 F.3d at 106.

Defendant's motion does not make the required showing. The motion simply contains bare assertions that a Fourth Amendment violation occurred. Defendant broadly alleges that the decision to accost him "was unlawful, warrantless [and] without probable cause," that his arrest "was warrantless and without probable cause" and "does not fall within any exception to the Fourth Amendment's warrant requirement," and the seizure of evidence following his arrest "was warrantless and without probable cause and the police conduct does not fall within any exception to the Fourth Amendment's warrant requirement." See defendant's Motion to Suppress Evidence (Document No. 35), ¶¶3.a.-3.c. Defendant's motion does not allege any facts that, if true, would support a finding that evidence was obtained in violation of his constitutional rights.

Next, defendant's motion does not raise a material fact. "In the context of a suppression motion, a defendant may raise an issue of material fact by submitting evidence that, if true, would tend to establish an essential element of his or her claim that evidence was obtained unconstitutionally." Hines, 628 F.3d at 106 (citing Voigt, 89 F.3d at 1067). Defendant has not submitted any evidence in support of his broad assertion that a Fourth Amendment violation occurred, thus he has failed to raise any issue of fact.

In addition, defendant's motion does not dispute the government's version of events set forth in SA Orlando's affidavit in support of the criminal complaint. As stated, other than broadly claiming that a Fourth Amendment violation occurred, defendant has not offered any version of events contrary to the version in SA Orlando's affidavit. See United States v. Jackson, 363 Fed. Appx. 208, 210 (3d Cir. 2010) (holding that there was no abuse of discretion in district court's

5

decision to deny evidentiary hearing where the defendant did not offer any version of events contrary to the version contained in police reports attached to his motion).

Defendant's motion to suppress fails to present a colorable constitutional claim, identify facts material to that claim, and show why the facts are disputed, thus an evidentiary hearing is not required in this case, and the motion will be decided based upon the record that exists.

**B.   No Fourth Amendment Violation Occurred**

The actions of the police were lawful in this case. After the police observed defendant walking with a plainly visible outline of a firearm protruding from his clothing, they approached him, identified themselves as law enforcement and stated that they needed to speak with him. The police acted lawfully in approaching defendant. See United States v. Drayton, 536 U.S. 194, 200 (2002) ("[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen."); Florida v. Bostick, 501 U.S. 429, 435 (1991) (holding that even when officers have no basis for suspecting an individual, they may pose questions, ask for identification and request consent to search his luggage, provided the police do not induce cooperation by coercion).

When the police approached defendant, there was no seizure for Fourth Amendment purposes. The Supreme Court has held that a seizure occurs when the police apply physical force to restrain a person or, absent force, the person seized submits to police authority. California v. Hodari D., 499 U.S. 621, 626-28 (1991); see also, United States v. Mendenhall, 446 U.S. 544, 553 (1980) (stating that "a person is 'seized' only when, by means of physical force or a show of

6

authority, his freedom of movement is restrained").[1] Thus, if the police assert their authority and a suspect does not submit, there is no seizure. Hodari D., 499 U.S. at 626; see also United States v. Valentine, 232 F.3d 350, 358 (3d Cir. 2000). A submission to authority occurs when a suspect "manifests compliance with police orders." United States v. Waterman, 569 F.3d 144, 146, n.3 (3d Cir. 2009).

Here, instead of submitting to police questioning, defendant grabbed the right side of his waistband and fled. Defendant did not comply with police orders, thus he did not submit to their authority, and consequently no seizure occurred. Therefore, the protections of the Fourth Amendment did not apply.

Further, in the course of his flight, defendant discarded the firearm. An item a defendant discards during a police pursuit is considered abandoned for Fourth Amendment purposes. See United States v. Johnson, 432 Fed. Appx. 118, 121 (3d Cir. 2011) (a handgun that defendant discarded during a foot pursuit was abandoned). An individual does not have a reasonable expectation of privacy in abandoned property, thus defendant cannot mount a Fourth Amendment challenge regarding the firearm he discarded. See United States v. Fulani, 368 F.3d 351, 354 (3d Cir. 2004) (citing Abel v. United States, 362 U.S. 217, 241 (1960)). Because there was no event which triggered Fourth Amendment protection with respect to the firearm, defendant's motion to suppress evidence must be denied.

---

[1]The Supreme Court explained in Mendenhall that "[t]he purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" Mendenhall, 446 U.S. at 553-54 (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976)). The Court further explained that to characterize every street encounter between the police and an individual citizen as a seizure while not enhancing any Fourth Amendment interest "would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices." Mendenhall, 446 U.S. at 554.

AO 72
(Rev. 8/82)

Furthermore, defendant's warrantless arrest did not violate the Fourth Amendment. In order for a warrantless arrest to be lawful, it must be based on probable cause. United States v. Watson, 423 U.S. 411, 417-24 (1976) (holding that probable cause for a warrantless arrest exists when the officer has reasonable grounds to believe that an offense has been or is being committed).

Defendant's flight from the officers, coupled with his discarding of a firearm, provided the officers with ample probable cause for the warrantless arrest. See United States v. Laville, 480 F.3d 187, 195 (3d Cir. 2007) (unprovoked flight can elevate reasonable suspicion to probable cause if the police have reasonably trustworthy information to believe that an individual is engaged in criminal activity); Johnson, 432 Fed. Appx. at 121 (an individual's flight from police and discarding firearm during flight provided police with probable cause to arrest without a warrant).

### III.    Motion for Discovery (Document No. 32)

Defendant has filed a motion seeking discovery of various categories of information, including, inter alia, requests for exculpatory material and impeachment material related to any prospective government witnesses.

Generally, governmental disclosure of evidence in criminal cases is governed by Federal Rule of Criminal Procedure 16(a). The United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16(a)(1) "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." United States v. Ramos, 27 F.3d 65, 68 (3d Cir. 1994). As a general matter, these other areas are limited to the Jencks Act, 18 U.S.C. §3500, and

8

materials available pursuant to the "Brady doctrine."[2] Id.

In response to defendant's discovery motion, the government has acknowledged its obligations under Rule 16 and the Brady doctrine. Accordingly, defendant's discovery motion and request for exculpatory evidence[3] will be granted in part, and the government will be required to turn over all information falling under Rule 16(a) and the Brady doctrine to the extent that any such information exists and has not already been provided to defendant. To the extent defendant's discovery motion requests information that does not fall within the scope of Rule 16(a), Brady or the Jencks Act,[4] those requests will be denied.

As to the timing of the required disclosures, it is well settled that the government's obligations under Brady require it to disclose actual exculpatory evidence without undue delay. In contrast, Brady impeachment material ordinarily must be disclosed "in time for its effective use

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

[3] The government states in its response that it is unaware of any exculpatory Brady material pertaining to defendant.

[4] The Jencks Act provides that after a government witness testifies, and upon motion by the defendant, the government must produce "any statement ... of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. §3500(b); United States v. Weaver, 267 F.3d 231, 245 (3d Cir. 2001). The purpose of Jencks disclosure "is to provide the defendant with an opportunity to review the witness's statements for any possible inconsistencies that he might use to impeach the witness." United States v. Maury, 695 F.3d 227, 248 (3d Cir. 2012). Pursuant to 18 U.S.C. §3500(a), "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." Accordingly, "the government has no obligation to produce Jencks material until the witness has testified." Maury, 695 F.3d at 248.
    Although the government has no obligation to provide defendant with Jencks material until a witness testifies, the government in this case has indicated it will turn over Jencks material five days prior to trial. Thus, the court will enter an order encouraging, but not compelling, the government to provide any Jencks material to the defense five days prior to trial. See Maury, 695 F.3d at 248 n.18 (recognizing that "[d]espite [§3500(a)], many federal prosecutors routinely turn over Jencks material a few days before the witness testifies").

9

at trial." United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983). Therefore, should the government discover the existence of any exculpatory Brady evidence, such evidence must be disclosed to defendant forthwith. As to impeachment material, the Third Circuit encourages adherence to the long-standing policy of promoting early production of all types of Brady material "to ensure the effective administration of the criminal justice system." United States v. Starusko, 729 F.2d 256, 261 (3d Cir. 1984) (quoting Higgs, 713 F.2d at 44, n.6). Given the nature of this case, disclosure of Brady impeachment material five days prior to trial is sufficient to protect defendant's due process rights and to ensure that trial delay is avoided, and an order will be entered to that effect.

IV.     **Motion to Dismiss Indictment on Jurisdictional Grounds (Document No. 33)**

Defendant has moved to dismiss the indictment on jurisdictional grounds. According to defendant, the government's evidence that the firearm charged in the indictment was manufactured outside of Pennsylvania and was discovered in his possession in Pennsylvania is insufficient as a matter of law to prove his possession was "in or affecting interstate commerce," an essential element of a §922(g)(1) violation. See Jones v. United States, 529 U.S. 848 (2000); United States v. Morrison, 529 U.S. 598 (2000); United States v. Lopez, 514 U.S. 549 (1995). Thus, defendant argues that the indictment should be dismissed because the court lacks subject matter jurisdiction over this case.

However, as defendant has acknowledged in his motion, the Third Circuit has ruled that §922(g)(1) is constitutional as a valid exercise of the Commerce Clause. See United States v. Singletary, 268 F.3d 196, 204-05 (3d Cir. 2001); United States v. Gateward, 84 F.3d 670, 672 (3d Cir. 1996). The Third Circuit also has held that proof that a defendant possessed a firearm in a

AO 72
(Rev. 8/82)

state other than the state in which it was manufactured is sufficient to establish the interstate nexus element for a violation of §922(g)(1).[5] United States v. Shambry, 392 F.3d 631, 634-35 (3d Cir. 2004).

Defendant acknowledges that Singletary is the law of this Circuit and that he merely is raising the issue to preserve his jurisdictional claims should Scarborough v. United States, 431 U.S. 563 (1977), the holding underpinning the Singletary and Shambry cases, be overruled. As defendant has conceded that his position is contrary to the current law, and there being no matter presently before the United States Supreme Court on this subject which would justify holding defendant's motion in abeyance, defendant's motion to dismiss the indictment on jurisdictional grounds will be denied. See United States v. Benjamin, 711 F.3d 371, 381 (3d Cir. 2013) (summarily rejecting argument that §922(g)(1) is unconstitutional where defendant recognized his arguments are foreclosed by Singletary).

## V. Motion to Compel the Government to Provide Defendant with a Statement of Uncharged Misconduct Evidence (Document No. 34)

Defendant seeks an order compelling the government to provide him with a statement of the nature, dates and places of occurrences of any offenses or acts of misconduct other than those set forth in the indictment which the government will seek to offer in evidence at trial pursuant to Fed.R.Evid. 404(b) and/or evidence of any prior convictions pursuant to Rule 609.

Rule 404(b) requires the government to provide reasonable notice prior to trial of its intention to use evidence of other crimes, wrongs or acts for the purpose of proving motive,

---

[5]According to SA Orlando's affidavit, Ruger, the manufacturer of the recovered firearm, has manufacturing operations in Arizona, New Hampshire and Connecticut, thus it traveled in interstate commerce to Pennsylvania.

11

AO 72
(Rev. 8/82)

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. See Fed.R.Evid. 404(b)(2). According to the Rule, "[o]n request by a defendant in a criminal case, the prosecutor must: (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial . . . ." Fed.R.Evid. 404(b)(2)(A) and (B).

The government's response indicates that it has not yet identified the specific bad acts by defendant that it will seek to introduce at trial. The government states it is aware of the notice requirement under Rule 404(b), and it will provide the required notice at least two weeks before trial.

According to the commentary to Rule 404(b), other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes reasonable notice will depend on the circumstances of each case. Courts that have considered what constitutes "reasonable notice" have concluded that notice of intent to use Rule 404(b) evidence seven to ten days prior to trial is sufficient. See United States v. Evangelista, 813 F.Supp. 294, 302 (D.N.J. 1993) (ten days); United States v. Alex, 791 F.Supp. 723, 728-29 (N.D.Ill. 1992) (seven days); United States v. Williams, 792 F.Supp. 1120, 1133 (S.D.Ind. 1992) (ten days). Thus, the government's commitment to provide notice under Rule 404(b) at least two weeks prior to trial is consistent with the case law interpreting the rule, and an order will be entered to that effect.[6]

---

[6]The government notes in its response, however, that it has some idea of the evidence that it will seek to have admitted under Rule 404(b). First, the government believes it has evidence that on two other occasions defendant fled from police and tossed away a firearm during his flight. In addition, the government notes that the same firearm defendant discarded in this case was used two weeks earlier to shoot Clifford Wood, who is an enemy of defendant.

AO 72
(Rev. 8/82)

As for defendant's request under Rule 609, the government indicates that it will inform defendant of any such evidence it intends to admit two weeks prior to trial.[7]

## VI. Conclusion

For the foregoing reasons, defendant's motion to suppress evidence and motion to dismiss the indictment both will be denied, and his other pretrial motions will be granted in part and denied in part as explained herein. An appropriate order will follow.

_Gustave Diamond_

Gustave Diamond
United States District Judge

Date: _June 23, 2015_

cc:    Eric Rosen
       Assistant U.S. Attorney

       W. Penn Hackney
       Assistant Federal Public Defender

---

[7] Rule 609(a)(1)(B) allows, for the purpose of attacking the credibility of an accused, the admission of evidence that the accused has been convicted of any crime punishable by death or imprisonment in excess of one year if the court determines that the probative value of admitting that evidence outweighs the prejudicial effect to the accused. Rule 609(a)(2) further provides that evidence that any witness has been convicted of a crime involving dishonesty or false statement shall be admitted regardless of punishment. The only notice requirement in Rule 609 is that the government is required to provide "reasonable written notice" of its intent to use evidence of a conviction more than ten years old. Fed.R.Evid. 609(b)(2).

AO 72
(Rev. 8/82)